The facts shewn by the evidence are—that, before the year 1757, L. C. Lebreton was owner of a plantation of thirty-two arpents of front on the Mississippi, with the depth of forty, about seven miles above the city of New-Orleans. There existed thereon a saw mill *13 near the lower boundary of said tract, or the upper one of the next plantation, which was that of J. Belair, having eighteen arpents of front and eighty in depth.
On the 6th of September, 1757, L. C. Lebreton obtained a grant of the whole depth between a continuation of his side lines, as far as another plantation, which he owned between the cypress swamps of the river, and those of the lake.
L. C. Lebreton's plantation is now that of the plaintiff. J. Belair’s is now owned, for the greatest part by the defendant, and the premises in dispute are part of it.
In 1767, J. Belair died, and his plantation was sold in two lots, one of ten arpents, immediately below Lebreton's plantation, and the other of eight arpents, both with a depth of eighty. A. & H. Belair bought the former and J. B. C. Lebreton, son of L. C. Lebreton, the latter.
On the 11th of January, 1768, J. B. C. Lebreton, by a double exchange with De la Freniere and A. & H. Belair, obtained the upper lot of J. Belair’s plantation in lieu of the lower, which he had bought.
On the 10th of April, 1770, J. B. *14 C. Lebreton and his wife sold one-half of this lot to Belair, viz: ten arpents in front on the river, immediately below L. C. Lebreton's plantation, with the depth of forty arpents.
J. B. C. Lebreton died in the following year, (1771) leaving a widow and several minor children, one of whom was B. F. Lebreton. L. C. Lebreton, the father of J. B. C. died on the 10th of June, 1776.
The property of the estate of J. B. C. Lebreton was adjudged to his widow at its valuation, and was not sufficient to cover her claims.
On the 21st of January, 1781, the plantation first mentioned was adjudged to B. Macarty, the plaintiff's grand-father, from whom it passed to the plaintiff by descent and purchase.
The sale was provoked by B. Macarty, stiling himself tutor and curator ad bona of the persons and estates of the minors Lebretron, sons of J. B. C. Lebreton, and the premises to be sold, are described as the plantation left by said Lebreton, and in the adjudication, as the plantation of F. L. Lebreton. (This is evidently a clerical error, F. L. Lebreton being mentioned as present at the sale.) The extent of the premises are not spoken of.
*15 On the 13th of January, 1789. Villiers obtained from Gov. Miro, a grant of twenty-six arpents in depth, beyond the plantation which he had bought on the 10th of April, 1770, from J. B. C. Lebreton.
And on the next day sold to B. F. Lebreton a tract of seven arpents and three feet in front, with the depth of sixty-six arpents, bounded on the upper side by the plantation first mentioned, as the property of L. C. Lebreton and that of J. B. Macarty, the plaintiff's father, son of B. Macarty.
On the 15th of January, 1800, B. F. Lebreton having died insolvent, the land, which he had bought from Villiers, was sold at auction, and purchased by the defendant: it is described as having seven arpents in front with the ordinary depth.
On the 11th of February, 1806, D. Clarke and J. Garrick, syndics of B. F. Lebreton's creditors, declared before a notary public, that there had been an error in the sale of the 15th of January, 1800, in mentioning that the land was sold with the ordinary depth, and that in truth it was sold with the depth mentioned in the sale made by Villiers to their insolvent, on the 14th of January, 1789.
*16 B. Macarty, the plaintiff's grand father, does not appear to us to have purchased the land in dispute, which was part of the land which J. B. C. Lebreton acquired by a double exchange, with La Freniere and Belair, and which he retained, when he sold the same land with the depth of forty arpents only to Villiers, on the 10th of April 1770.
The tract, which was adjudged to the plaintiff's grand-father, is described as a riparious estate, with several edifices, and a sawing mill thereon, evidently that which was left by L. C. Lebreton, a part of which descended to the children of J. B. C. Lebreton, one of his sons, as representatives of their father, who in his life time had occupied it as a tenant, and occasionally drawn timber for the mill from the land, below that of his father's, (that now in dispute) As the land that was then sold made part of the estate of L. C. Lebreton, of which the minor children of J. B. C. Lebreton had only the portion which they took, as representatives of their father, it cannot be imagined that another tract (although contiguous) but which had immediately descended to them from their father, and which belonged wholly to them, was ex *17 pressly sold as part, or tacitly passed as an accessory of the plantation of L. C. Lebreton, their grand-father, which was the avowed subject of the sale.
Two tracts of land, part of different estates, and the property of different sets of heirs, cannot easily be believed to have been sold in a lump for one parcel, so as to render it impossible to ascertain what part of the whole was to be accounted for to each set of heirs.
Neither can it be conceived how any part of the land of J. B. C. Lebreton’s estate, can be passed as an accessory, in the sale of a tract of land part of the estate of L. C. Lebreton.
We conclude that the plaintiff has shewn no litteral title to the land in dispute.
A canal was dug, timber was felled, by the plaintiff’s grandfather and father, and by himself; but acts like these, as we noticed in the case of Prevost's heirs vs. Johnson et al., are not sufficient to establish a title by prescription; the digging of a canal is the work of a short time, and is not a continued act of ownership; the felling of trees is considered a mere trespass; the tracks of carts are only evidence of trespasses of this kind. In the present case, there is evidence of both plaintiff *18 and defendant, and their predecessors, occasionally resorting to the land in dispute for wood. We are bound to say, that the plaintiff cannot recover under the prescription, longissimi temporis, nor under that of 10 and 20 years; for he has no colour of title.
He has however shewn a possession by enclosure of a slip of land of ninety-two feet in width, in its lower part, towards the swamp, at the place G H, in the plan cited; the lowermost enclosure of which runs on the outside of the ditch, and reaches the lower line of the plaintiff's plantation, at the point F. Of the land, within this enclosure, he has evidently possession, and he appears to have had it upwards of one year before the inception of the present suit: he must be maintained in this legal possession against the defendant, unless the latter can shew a title.
He contends that Governor Miro granted to Villiers on the 13th of January, 1789, twenty-six arpents in depth, or about two-thirds of the disputed land towards the river; that Villiers sold it to B. F. Lebreton, with a depth of sixty-six arpents, and that thus, on the adjudication, the premises disposed of, were erroneously stated to be sold with the *19 ordinary depth, i. e. 40 arpents only. The syndics about six years afterwards gave him their declaration before a notary that this was done through a mistake, and the land was intended to be sold with the same depth, as in the sale from Villiers to their insolvent, i. e. 66 arpents.
The adjudication, in which an error is stated to have been committed, was made by a notary public, at the time acting as auctioneer, in consequence of a judicial decree, to which were parties, the widow of B. F. Lebreton, the curator of his children by a first wife, that of those of the second wife, and the syndics of his creditors. We cannot conceive how it can be urged that a sale made with such formalities, and in which so many different persons were interested, and were made parties, was validly altered (and made to convey what did not pass by it, before the alteration) by the syndics of the creditors. It is very clear that the defendant did not, by the adjudication nor the amendment, acquire any right to the 26 arpents in depth, below the forty that appear thereby to have been adjudged to him.
Being thus without a literal title, he cannot invoke any prescription, but that longissimi temporis.
*20 As to the 26 arpents beyond the land described in the adjudication, he has no vendor whose possession he might invoke. He does not appear to have ever been on the disputed land, before his purchase of that contiguous thereto in 1800.
His counsel, with the aid of that of the plaintiff, have strenuously strove to shew us that the titles, set up by the respective parties, are unsupported by literal or parol evidence.
The plaintiff, however, by the removal of his fences, has taken actual possession of a narrow strip, to which that possession and time have given him the lowest title that may be had in land, the naked possession. This scintilla juris enables him to prevail over the defendant, who has not even a shadow of right on this slip of land.
It is therefore ordered, adjudged and decreed, that the judgment of the parish court be annulled, avoided and reversed, and that the plaintiff be maintained in his possession of the triangular strip of land marked in the plan, by the letters F G and H; and that the defendant be ever enjoined from disturbing him therein, and that the petition be dismissed as to the remainder of the land. The costs to *21 be paid in the court below by the defendant, and in this by the plaintiff. See July term.
Moreau and Mazureau for the plaintiff, Hennen, Livingston and Grymes for the defendant.